# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMSPORTS AND ENTERTAINMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04C 2461 |
| | ) | |
| v. | ) | Judge Aspen |
| | ) | |
| AMERICAN MOTORCYCLIST ASSOCIATION, | ) | Magistrate Judge Keys |
| | ) | |
| Defendant. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES OF
## AMERICAN MOTORCYCLIST ASSOCIATION TO PLAINTIFF'S COMPLAINT

Defendant, the American Motorcycle Association, Inc., d/b/a the American Motorcyclist Association ("AMA"), states as its answer and affirmative defenses to the Complaint of Plaintiff, JamSports and Entertainment, LLC ("Plaintiff"), as follows:

## I. SUMMARY OF ACTION

1.     This is an action brought by JamSports for damages resulting from (i) the AMA's wrongful interference with JamSports' contractual rights, (ii) the AMA's wrongful interference with JamSports' prospective business opportunities and/or (iii) the AMA's breach of contract it entered into with JamSports through its wholly owned and for-profit subsidiary, Paradama Productions Inc. d/b/a AMA Pro Racing ("AMA Pro Racing").

**ANSWER:**    AMA admits that Plaintiff filed this action for alleged damages against AMA. AMA denies that: (i) it interfered with any of Plaintiff's contractual rights or prospective business opportunities; or (ii) it was party to, or breached, a contract with Plaintiff; or (iii) any promotion agreements between Plaintiff and AMA's wholly owned subsidiary, Paradama Productions, Inc. d/b/a AMA Pro Racing ("AMA Pro Racing"), existed or were interfered with.

2.     In early November 2001, AMA Pro Racing named JamSports the promoter of the AMA Supercross racing series for the 2003-2009 racing seasons. Contemporaneous therewith, AMA Pro Racing and JamSports entered into a written promotion agreement (the "First Agreement") reflecting the material terms of the parties' agreed-to relationship, plus an

obligation to negotiate confidentially, exclusively, and in good faith toward a final promotion agreement. Thereafter, JamSports proceeded to perform in accordance with the First Agreement and the parties negotiated the terms of a second, more definitive, promotion agreement (the "Promotion Agreement"). By early February, 2002, the parties finalized the Promotion Agreement, and it was approved by AMA Pro Racing's board of directors. However, AMA Pro Racing ultimately refused to provide JamSports with a signed Promotion Agreement and subsequently reneged upon the Promotion Agreement.

**ANSWER:** Upon information and belief, AMA denies the allegations contained in

Paragraph 2 of the Complaint, except to admit that AMA Pro Racing did not sign a Promotion

Agreement.

3. The AMA, amongst others, is directly responsible for these breaches. The AMA disapproved of AMA Pro Racing entering into these contracts with JamSports because it preferred that AMA Pro Racing maintain its relationship with SFX Motor Sports, Inc. d/b/a Clear Channel Entertainment - Motor Sports ("Clear Channel"), the company that had promoted the AMA Supercross series prior to the selection of JamSports as promoter. Because it desired to remain with Clear Channel, and despite the fact that JamSports met all of its obligations under the First Agreement and that AMA Pro Racing and JamSports successfully negotiated and approved a Promotion Agreement, the AMA renounced the JamSports contracts and directed AMA Pro Racing not to sign the Promotion Agreement.

**ANSWER:** AMA denies the allegations contained in Paragraph 3 of the Complaint.

4. In addition to directly ordering AMA Pro Racing to breach its contracts with JamSports, members of the AMA's Board of Directors, who had knowledge of JamSports' contractual rights, engaged in a pattern of conduct, including numerous conversations with Clear Channel and AMA Pro Racing representatives via telephone, in person and in writing in an attempt to stop AMA Pro Racing from meeting its obligations under the First Agreement and to prevent AMA Pro Racing from signing and performing under the Promotion Agreement it entered into with JamSports.

**ANSWER:** AMA denies the allegations contained in Paragraph 4 of the Complaint.

5. As a direct and proximate result of the AMA's tortious efforts, in March 2002, AMA Pro Racing gave Clear Channel the very rights to promote the AMA Supercross racing series that had been contractually promised to JamSports.

**ANSWER:** AMA denies the allegations contained in Paragraph 5 of the Complaint.

6.    Alternatively, the AMA is liable for the breach of the First Agreement and Promotion Agreement because AMA Pro Racing was the AMA's alter ego and not a truly independent company as evidenced by AMA Pro Racing's and the AMA's own assertion that the AMA retained control of the contractual rights in question.

**ANSWER:**    AMA denies the allegations contained in Paragraph 6 of the Complaint.

7.    As a result, JamSports has sustained economic injuries in excess of $20 million.

**ANSWER:**    AMA denies the allegations contained in Paragraph 7 of the Complaint.

## II. JURISDICTION AND VENUE

8.    JamSports, incorporated in Delaware, has its principal place of business in Chicago, Illinois. The AMA, registered in Ohio, also has its principal place of business in Ohio. The amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs. Because there is diversity of citizenship between the parties to this action and the amount in controversy exceeds $75,000.00, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(c)(1).

**ANSWER:**    AMA admits that it is a not-for-profit corporation incorporated in the State of Ohio and that it has its principal place of business in Pickerington, Ohio. AMA further admits that Plaintiff's Complaint alleges damages in excess of $75,000.00. On information and belief, AMA denies that Plaintiff, which purports to be a limited liability company (LLC), is "incorporated" in Delaware. AMA states that, for purposes of diversity jurisdiction, an LLC is considered to be a citizen of each state of which any of its members is a citizen. AMA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8 and therefore denies same.

9.    For purposes of venue, substantial parts of the events giving rise to JamSports' claims against the AMA occurred in this judicial district. The First Agreement and the Promotion Agreement were negotiated, in part, in this judicial district. Communications between the AMA Pro, the AMA and JamSports and other actions in furtherance of the contract occurred in Chicago, Illinois. In addition, the AMA transacts business and is found in this judicial district. Accordingly, venue is proper here pursuant to 28 U.S.C. § 1391(b).

**ANSWER:**    Solely for purposes of venue in this matter, AMA admits that it transacts business in this judicial district such that venue in this matter is proper pursuant to 28 U.S.C. §1391(b). AMA denies the remaining allegations contained in Paragraph 9 of the Complaint,

except to admit that some communications by Plaintiff relating to the subject of this litigation

took place in this district.

## III. THE PARTIES

10.     JamSports is a Delaware limited liability company, having its principal place of business in Chicago, Illinois. JamSports is engaged in the business of, among other things, producing and promoting sporting events.

**ANSWER:**     AMA is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 10 of the Complaint and therefore denies

same.

11.     On information and belief, the AMA is registered in Ohio and has its principal place of business in Pickerington, Ohio. The AMA is a 265,000 member not-for-profit organization that holds itself out as an organization engaged in protecting and promoting the interests of motorcyclists. According to its website, the AMA is the world's largest motorsports sanctioning body. Its subsidiary, AMA Pro Racing, is or has been engaged in, among other things, the business of sanctioning, scheduling, producing and promoting motorcycle sporting events, and negotiating to do the foregoing, in Illinois and throughout the United States. At all times relevant hereto, the AMA and AMA Pro Racing were present and have transacted business in Illinois.

**ANSWER:**     AMA admits the allegations contained in Paragraph 11 of the Complaint

except to deny that AMA Pro Racing has engaged in the specified activities throughout the

United States.

## IV. ALLEGATIONS COMMON TO ALL COUNTS

12.     AMA Pro Racing, a division of the AMA, represents and holds itself out as being the owner of, and sanctioning body for, the AMA Supercross Series, which is a championship-level, dirt-track motorcycle racing series held in large indoor and outdoor stadiums around the U.S. each year from January through May. The AMA Supercross Series is an extremely valuable franchise. The series generates approximately $25 million in annual revenues, including gate receipts, ancillary revenues, sponsorships and television rights.

**ANSWER:**     AMA denies that AMA Pro Racing is a division of the AMA (i.e., it is a

wholly owned subsidiary), that AMA Pro Racing is the owner of the AMA Supercross Series

(i.e., it holds certain rights with respect to the sanctioning of that Series), or that the AMA

Supercross Series is a franchise. Answering further, AMA is without knowledge or information sufficient to form a belief as to the annual revenues related to the AMA Supercross Series and therefore denies those allegations. AMA admits that AMA Pro Racing is the sanctioning body for the AMA Supercross Series which is a championship level dirt track motorcycle racing series held in large indoor and outdoor stadiums around the USA each year from January through early May.

13. From 1997 through 2002, the AMA Supercross Series was promoted by Clear Channel (or by companies that Clear Channel subsequently acquired). However, Clear Channel's contract to promote the AMA Supercross Series was to expire at the conclusion of the 2002 racing season.

ANSWER: AMA admits the allegations contained in Paragraph 13 of the Complaint.

14. Beginning in the Summer of 2001, AMA Pro Racing solicited bids from other promoters, including JamSports, for the purpose of entering into an agreement to promote the AMA Supercross Series in 2003 and beyond.

ANSWER: Upon information and belief, the AMA admits the allegations contained in Paragraph 14 of the Complaint.

### The First AMA Pro Racing Agreement With JamsSports

15. On November 2, 2001, AMA Pro Racing and JamSports entered into an agreement under which JamSports agreed to produce and promote the AMA Supercross Series, and undertake related sales and marketing matters (the "First Agreement"). A true and correct copy of the First Agreement is attached as Exhibit A.

ANSWER: AMA states that the writing attached to the Complaint as Exhibit A speaks for itself. AMA denies the remaining allegations contained in Paragraph 15 of the Complaint.

16. Pursuant to Paragraph 1 of the First Agreement, AMA Pro Racing and JamSports agreed to produce and promote not less than fourteen (14) AMA Supercross Series events per season (defined as January 1 through the first week of May) for a period of seven (7) years beginning January 1, 2003, with an opportunity to extend the term.

ANSWER: AMA states that the writing attached to the Complaint as Exhibit A speaks for itself. AMA denies the remaining allegations contained in Paragraph 16 of the Complaint.

-5-

17. AMA Pro Racing and JamSports also agreed that, except for the Daytona event, JamSports would have the exclusive rights to produce and promote the AMA Pro Racing Supercross Series in North America.

**ANSWER:** AMA states that the writing attached to the Complaint as Exhibit A speaks for itself. AMA denies the remaining allegations contained in Paragraph 17 of the Complaint.

18. In addition, the First Agreement sets forth the parties' understanding with respect to financial terms. Pursuant to Paragraph 7(a), AMA Pro Racing and JamSports agreed that AMA Pro Racing would receive the greater of eight percent (8%) of the gross gate receipts or thirty percent (30%) of the net income from each Supercross event. Paragraph 7(a) of the First Agreement states, in part:

> **Event Revenue Share.** AMA Pro Racing shall receive the greater of (i) eight percent (8%) of the gross gate receipts (less applicable taxes and facility fees) of each Supercross event, or (b) thirty percent (30%) of Net Income of each Supercross event (in either case, hereinafter referred to as "Revenue Share"), and the remainder of the gross gate receipts or Net Income, as the case may be, of each Supercross event, shall be retained by JamSports....

**ANSWER:** AMA admits that certain language in the writing attached to the Complaint as Exhibit A is quoted accurately in Paragraph 18 of the Complaint. AMA states that the writing attached as Exhibit A to the Complaint speaks for itself. AMA denies the remaining allegations contained in Paragraph 18 of the Complaint.

19. The First Agreement also contained terms concerning "Other Revenue Streams." In Paragraph 8, the parties agreed to terms concerning "Series Media and Marketing Rights," "Event Sponsorship," 'Product Merchandising Revenue," and Internet Merchandising and Audio Visual Products and Other Products." Those terms contemplate, *inter alia*, shared revenue between JamSports and AMA Pro Racing resulting from the business relationship.

**ANSWER:** AMA states that the writing attached to the Complaint as Exhibit A speaks for itself. AMA denies the remaining allegations contained in Paragraph 19 of the Complaint.

20. Pursuant to Paragraph 7(b), JamSports agreed to advance to AMA Pro Racing a non-refundable amount of three million dollars ($3,000,000.00). Paragraph 7(b) states:

> **Advance.**
> (i) **Timing, Purpose, Amount.** JamSports shall advance to AMA Pro Racing on a mutually agreed upon date (but not before the second calendar quarter of the calendar year 2002) the non-refundable amount of Three Million Dollars ($3,000,000.00) (the "Advance"), which amount shall be used by AMA

Pro Racing as general working capital to ensure the success of the Supercross series through the creation of a media and television series that attracts sponsorships.

(ii) **Recoupment by JamSports**. JamSports is entitled to and shall recoup the Advance from AMA Pro Racing's Revenue Share. After JamSports recoups the Advance, JamSports shall commence paying AMA Pro Racing's Revenue Share To AMA Pro Racing.

**ANSWER:** AMA admits that certain language in the writing attached to the Complaint as Exhibit A is quoted accurately in Paragraph 20. Answering further, AMA states the writing attached as Exhibit A speaks for itself. AMA denies the remaining allegations contained in Paragraph 20 of the Complaint.

21. The First Agreement reflected the material terms of the agreed-to relationship with respect to JamSports' promotion of the AMA Supercross series from 2003 to 2009. The First Agreement is itself a binding agreement giving JamSports the right to promote the AMA Supercross series from 2003 to 2009.

**ANSWER:** AMA denies the allegations contained in Paragraph 21 of the Complaint.

22. The parties anticipated and agreed that they would reduce the terms and conditions that had been agreed upon in their First Agreement into other written agreements that, collectively, would be referred to as the Promotion Agreement (the "Promotion Agreement").

**ANSWER:** AMA denies the allegations contained in Paragraph 22 of the Complaint but states, upon information and belief, that AMA Pro Racing and the Plaintiff did intend to attempt to negotiate a written agreement for the production and promotion of the AMA Supercross Series.

23. Having already negotiated and agreed to all of the material terms and conditions for the transaction that the parties had agreed to undertake, the parties agreed to use their best efforts and negotiate in good faith the final form of the Promotion Agreement, together with any remaining contractual terms and conditions that would be necessary to carry out the intent of the First Agreement. Paragraph 13 of the parties' First Agreement states:

The parties shall use their best efforts, negotiating in good faith, to enter into the Promotion Agreement within thirty (30) days from the date this letter is fully executed by the parties hereto.

**ANSWER:** AMA admits that certain language in the writing attached to the Complaint as Exhibit A is quoted accurately in Paragraph 23, but denies that Paragraph 23 sets forth Paragraph 13 of that writing in its entirety. Answering further, AMA states, upon information and belief, that the writing attached as Exhibit A speaks for itself, and that the Plaintiff and AMA Pro Racing intended to attempt to negotiate a written agreement for the production and promotion of the AMA Supercross Series. AMA denies the remaining allegations contained in Paragraph 23 of the Complaint.

24. Having already negotiated and agreed to all of the material terms and conditions for the transaction that the parties had agreed to undertake, the parties further agreed that they would negotiate -- exclusively with each other - the final form of the Promotion Agreement, together with any remaining customary contractual terms and conditions that would be appropriate for the transaction. Paragraph 13 of the First Agreement states:

> **Exclusivity.** Each of the parties agrees that for a period of ninety (90) days after the date this letter is fully executed by the parties hereto [], AMA Pro Racing and JamSports shall negotiate exclusively and in good faith with one another, and neither party shall enter into any discussions or negotiations with any third party with respect to the subject matter hereof.

**ANSWER:** AMA admits that certain language in the writing attached to the Complaint as Exhibit A is quoted accurately in Paragraph 24, but denies that Paragraph 24 sets forth Paragraph 13 of that writing in its entirety. Answering further, AMA states that the writing attached as Exhibit A speaks for itself. AMA denies the remaining allegation contained in Paragraph 24 of the Complaint.

25. In furtherance of their agreement and commitment to negotiate in good faith and exclusively with each other, the parties also agreed to promptly notify each other if they received any other offers from other promoters seeking to promote and market AMA Supercross events. Paragraph 13 specifically provides:

> If a party hereto shall receive any offer from a third party with respect to the subject matter hereof, the receiving party shall promptly notify the other party

hereto of the offer, the name of the offeror and the terms thereof.

**ANSWER:** AMA admits that certain language in the writing attached to the Complaint as Exhibit A is quoted accurately in Paragraph 25, but denies that Paragraph 25 sets forth Paragraph 13 of that writing in its entirety. Answering further, AMA states that the writing attached as Exhibit A speaks for itself. AMA denies the remaining allegation contained in Paragraph 25 of the Complaint.

26. The parties also agreed to protect the confidentiality of the business relationship pending the anticipated execution of a formal Promotion Agreement. Paragraph 12 of the First Agreement states:

> **Confidentiality**. AMA Pro Racing and JamSports each agree that the terms of this letter agreement, and, in particular, its financial terms, are private and confidential. Neither party hereto shall divulge the terms of this letter of intent to any other persons in any manner, except each party may so inform its attorneys, accountants and financial consultants as reasonably necessary for the performance of its obligations hereunder and under the Promotion Agreement, who, however, shall be instructed not to divulge its terms to any other persons except and unless as they may be finally required by law or court process. In the event of a breach of the foregoing, the damaged party may seek recovery of all damages as allowed by law, including, without limitation, injunctive relief.

**ANSWER:** AMA admits that certain language in the writing attached to the Complaint as Exhibit A is quoted accurately in Paragraph 26, but denies that Paragraph 26 sets forth Paragraph 12 of that writing in its entirety. Answering further, AMA states that the writing attached as Exhibit A speaks for itself. AMA denies the remaining allegations contained in Paragraph 26 of the Complaint.

27. Although the parties anticipated subsequently entering into the Promotion Agreement, the First Agreement explicitly provided that it, in and of itself, created a binding obligation on AMA Pro Racing to use its best efforts to negotiate the remaining terms of the deal in good faith, to deal exclusively with JamSports pending execution of a definitive promotion agreement, and to observe the confidentiality provisions contained in the First Agreement.

**ANSWER:** AMA states that the writing attached to the Complaint as Exhibit A speaks for itself. AMA denies the remaining allegations contained in Paragraph 27 of the Complaint.

**JamSports' Performance Under the First Agreement and**
**in Reasonable Anticipation of the Promotion Agreement**

28.  On November 5, 2001, AMA Pro Racing's Chief Executive Officer, Scott Hollingsworth, sent a letter to numerous motor sports venues, announcing its partnership with JamSports and informing the venues that it had authorized JamSports to negotiate with the venues on an exclusive basis on AMA Pro Racing's behalf. A true and correct copy of AMA Pro Racing's November 5, 2001, letter is attached as Exhibit B.

**ANSWER:**   AMA admits that Exhibit B to the Complaint is a true and correct copy of

a letter sent by the Chief Executive Officer of AMA Pro Racing. Answering further, AMA states

that the writing attached as Exhibit B speaks for itself. AMA denies the remaining allegations

contained in Paragraph 28 of the Complaint.

29.  In a press release issued on November 6, 2001, AMA Pro Racing announced that it had selected JamSports as its new promoter partner for the AMA Supercross Series. It further announced that it made the decision after evaluating proposals from several companies, including Clear Channel, the promoter whose contract with AMA Pro Racing was scheduled to expire at the end of the 2002 season. A true and correct printed copy of AMA Pro Racing's webpage as of February 27, 2002, devoted to the announcement of a partnership with JamSports, is attached as Exhibit C.

**ANSWER:**   AMA admits that the writing attached to the Complaint as Exhibit C is a

true and correct copy of a portion of the website of AMA Pro Racing as of February 27, 2002.

Answering further, AMA states that the writing attached as Exhibit C speaks for itself. AMA

denies the remaining allegations contained in Paragraph 29 of the Complaint.

30.  In reliance upon AMA Pro Racing's representations and its agreement to negotiate exclusively and in good faith with JamSports, and with AMA Pro Racing's full knowledge and acquiescence, JamSports immediately took steps to promote the AMA Supercross Series and to prepare for the 2003 season. As a result of JamSports' preexisting relationship with Indianapolis Motor Speedway ("IMS"), it arranged a meeting between IMS and AMA Pro Racing, the result of which was an agreement to develop long-term plans for television production of AMA Supercross events. On December 3, 2001, AMA Pro Racing and JamSports issued a joint statement announcing AMA's alliance with IMS. A true and correct copy of AMA Pro Racing's webpage as of February 27, 2002, devoted to the IMS announcement, is attached as Exhibit D.

**ANSWER:**   Upon information and belief, AMA admits that Plaintiff arranged the

meeting between Indianapolis Motor Speedway and AMA Pro Racing which resulted in the

intent to work toward the development and execution of a long-term television plan for, and cross marketing of, the AMA Supercross Series beginning with the 2003 season. AMA further admits that the writing attached to the Complaint as Exhibit D is a true and correct copy of a portion of AMA Pro Racing's website as of February 27, 2002. Answering further, AMA states that the writing attached as Exhibit D speaks for itself. AMA denies the remaining allegations contained in Paragraph 30 of the Complaint.

31.     AMA Pro Racing issued another joint statement on December 7, 2001, announcing a television partnership with Speedvision, a 24-hour cable network devoted to motor sports. A true and correct copy of AMA Pro Racing's webpage as of February 27, 2002, devoted to the Speedvision announcement is attached as Exhibit E.

**ANSWER:**     Upon information and belief, AMA admits that AMA Pro Racing issued a statement on or about December 7, 2001, announcing a television partnership with Speed Vision. AMA admits that the writing attached to the Complaint as Exhibit E is a true and correct copy of a portion of AMA Pro Racing's website as of February 27, 2002. Answering further, AMA states that the writing attached as Exhibit E speaks for itself. AMA denies the remaining allegations contained in Paragraph 31 of the Complaint.

32.     In reliance upon AMA Pro Racing's representations and its agreement to negotiate exclusively and in good faith, JamSports incurred substantial expenses and engaged in negotiations with marketing, radio, venues, merchandising, and sponsorship entities in an effort to promote the AMA Supercross Series and to prepare for the 2003 season.

**ANSWER:**     AMA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint and therefore denies same.

33.    On December 21, 2001, AMA Pro Racing and JamSports issued a joint statement announcing the list of major market cities for the 2003 racing season. A true and correct printed copy of AMA Pro Racing's webpage (as it existed on February 27, 2002), devoted to the racing schedule announcement, is attached as Exhibit F.

**ANSWER:**    Upon information and belief, AMA admits that the Plaintiff and AMA Pro Racing issued a joint statement announcing the list of major market cities for the 2003 season of the AMA Supercross Series. AMA further admits that the writing attached to the Complaint as Exhibit F is a true and correct copy of a portion of AMA Pro Racing's website as of February 27, 2002. AMA states that the writing attached as Exhibit F speaks for itself. AMA denies the remaining allegations contained in Paragraph 33 of the Complaint.

34.    In reliance upon AMA Pro Racing's representations and its agreement to negotiate exclusively and in good faith with JamSports, and with AMA Pro Racing's full knowledge and acquiescence, JamSports also committed extensive resources to ensure that its infrastructure would be sufficient to support its partnership with AMA Pro Racing. For instance, in January, 2002, JamSports committed office space to AMA Pro Racing staff and AMA Pro Racing staff actually moved into JamSports' offices.

**ANSWER:**    Upon information and belief, AMA admits that Plaintiff made space available to AMA Pro Racing in its offices. Answering further, AMA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34 of the Complaint and therefore denies same.

35.    In reliance upon AMA Pro Racing's representations and its agreement to use its best efforts and negotiate exclusively and in good faith with JamSports, and with AMA Pro Racing's full knowledge and acquiescence, in November, 2001, JamSports entered into a contract with Scoop Marketing, a public relations firm, for the sole purpose of promoting its relationship with AMA Pro Racing.

**ANSWER:**    AMA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint and therefore denies same.

## The AMA Supercross Series Promotion Agreement

36.     Two days prior to the expiration of the exclusivity period, on or about January 30, 2002, AMA Pro Racing contacted JamSports and demanded certain modifications to the Promotion Agreement.  It also informed JamSports that it would accept the form and content of the Promotion Agreement once those final modifications had been included in the Promotion Agreement.

**ANSWER:**     Upon information and belief, AMA admits that AMA Pro Racing engaged in discussions with Plaintiff on or about January 30, 2002, regarding changes to the proposed "Promotion Agreement", and that there had been extensive negotiations prior to that date.  Upon information and belief, AMA denies the remaining allegations contained in Paragraph 36 of the Complaint.

37.     Thereafter JamSports prepared a revised draft of the parties' Promotion Agreement, incorporating all of AMA Pro Racing's requested modifications, for consideration by the parties.  The revised draft of the Promotion Agreement was forwarded to AMA Pro Racing on February 1, 2002.

**ANSWER:**     Upon information and belief, AMA admits that Plaintiff forwarded to AMA Pro Racing a revised draft of the proposed "Promotion Agreement", but denies that all of the modifications requested by AMA Pro Racing were incorporated in any draft of the proposed "Promotion Agreement" forwarded by Plaintiff to AMA Pro Racing.  AMA denies any and all other remaining allegations contained in Paragraph 37 of the Complaint.

38.     Because AMA Pro Racing waited until the end of the exclusive negotiating period to demand these modifications, the parties by separate agreement dated February 1, 2002, extended the period to February 5, 2002.  A true and correct copy of the February 1, 2002, letter is attached as Exhibit G.  Even during the extension period, AMA Pro Racing delayed responding to JamSports and thus delayed concluding the transaction to which the parties had agreed, in breach of the terms of the First Agreement.

**ANSWER:**     AMA admits that Exhibit G is a true and correct copy of the February 1, 2002 letter issued by the Chief Executive Officer of AMA Pro Racing to a representative of the Plaintiff extending the exclusive negotiating period.  Answering further, AMA states that the writing attached as Exhibit G speaks for itself.  Finally, AMA is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 38 of the Complaint and therefore denies same.

39.    On February 5, 2002, JamSports sent a letter to AMA Pro Racing confirming its acceptance of AMA Pro Racing's additional terms and notifying AMA Pro Racing that JamSports was ready, willing, and able to sign the Promotion Agreement. A true and correct copy of the February 5, 2002, letter is attached as Exhibit H.

**ANSWER:**    AMA admits that Exhibit H to the Complaint is a true and correct copy of

a letter that was received by AMA Pro Racing on or shortly after February 5, 2002. Answering

further, AMA states that the writing attached as Exhibit H speaks for itself. AMA is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 39 of the Complaint and therefore denies same.

40.    On February 8, 2002, JamSports sent a letter to AMA Pro Racing, again confirming its acceptance of all terms in the Promotion Agreement. True and correct copies of JamSports' January 8, 2002, acceptance letter and the Promotion Agreement are attached as Exhibits I and J respectively.

**ANSWER:**    AMA admits that Exhibit I to the Complaint is a true and correct copy of a

letter received by AMA Pro Racing on or shortly after February 8, 2002, and that Exhibit J to the

Complaint is a true and accurate copy of a revised draft proposed Promotion Agreement that

Plaintiff enclosed with Exhibit I. Answering further, AMA states the writings attached as

Exhibits I and J speak for themselves. AMA is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in Paragraph 40 of the

Complaint and therefore denies same.

41.    Following JamSports' acceptance of AMA Pro Racing's modifications, there were no outstanding issues between the parties with respect to the Promotion Agreement.

**ANSWER:**    Upon information and belief, AMA denies the allegations contained in

Paragraph 41 of the Complaint.

42. On or about February 14, 2002, AMA Pro Racing's Board of Directors approved the Promotion Agreement with JamSports.

**ANSWER:** Upon information and belief, AMA denies the allegations contained in Paragraph 42 of the Complaint and avers that AMA Pro Racing's Board of Directors recommended approval of said Agreement to its sole shareholder, the AMA.

43. Despite the approval of the Promotion Agreement by AMA Pro Racing's board of directors on or about February 16, 2002 and despite the fact that, in Paragraph 20 of the Promotion Agreement, AMA Pro Racing warranted that it had authority to enter into the contract, the board of directors for the AMA renounced the JamSports contracts and directed AMA Pro Racing not to sign the Promotion Agreement. The AMA board did so despite the fact that AMA Pro Racing held itself out as a fully independent corporation and nothing in the JamSports' agreements with AMA Pro Racing made the agreements subject to AMA approval. As a direct result of the AMA's interference, the AMA directors told AMA Pro Racing to breach the agreements it reached with JamSports and, thus, ousted JamSports as the AMA Supercross promoter in direct contravention of the First Agreement and the Promotion Agreement.

**ANSWER:** AMA denies the allegations contained in Paragraph 43 of the Complaint.

## AMA Pro Racing's Breach of Contract – First Agreement

44. The First Agreement reflected the material terms of the agreed-to relationship with respect to JamSports' promotion of the AMA Supercross series from 2003 through 2009. The First Agreement is itself a binding agreement giving JamSports the right to promote the AMA Supercross series from 2003 through 2009.

**ANSWER:** AMA denies the allegations contained in Paragraph 44 of the Complaint.

45. Pursuant to the First Agreement, AMA Pro Racing also had an obligation to use its best efforts and negotiate in good faith the terms of the Promotion Agreement a second, more definitive agreement, *i.e.*, the Promotion Agreement.

**ANSWER:** AMA states the writing attached to the Complaint as Exhibit A, referenced by Plaintiff as the "First Agreement", speaks for itself. AMA denies the remaining allegations contained in Paragraph 45 of the Complaint.

46.    The purpose of the negotiations, as explicitly stated in the First Agreement, was to enter into a final Promotion Agreement which, in addition to the terms set forth in the First Agreement, would contain "customary covenants, representations, warranties, conditions precedent and indemnification provisions to be agreed upon by the parties for a transaction of this size and nature." (First Agreement, Paragraph 11).

**ANSWER:**    AMA states the writing attached to the Complaint as Exhibit A, referenced by Plaintiff as the "First Agreement", speaks for itself.  AMA denies the remaining allegations contained in Paragraph 46 of the Complaint.

47.    Having encouraged and directed JamSports to expend resources in negotiating the Promotion Agreement and preparing for its performance, AMA Pro Racing was also required to use its best efforts to complete the transaction in good faith.

**ANSWER:**    AMA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 of the Complaint and therefore denies same.

48.    After notifying JamSports that the deal was complete pending inclusion of its final modifications to the Promotion Agreement and receiving JamSports' acceptance of those terms, AMA Pro Racing was obligated to continue in good faith and sign the Promotion Agreement.

**ANSWER:**    Upon information and belief, AMA denies the allegations contained in Paragraph 48 of the Complaint.

49.    Even after notifying JamSports that it had obtained the approval of its Board of Directors, AMA Pro Racing refused to sign the Promotion Agreement and, subsequently, refused to perform in accordance with the terms of the Promotion Agreement.

**ANSWER:**    Upon information and belief, AMA denies all of the allegations contained in Paragraph 49 of the Complaint except that AMA Pro Racing has not signed or performed a "Promotion Agreement" with Plaintiff.

50.    AMA Pro Racing's failure to sign the final Promotion Agreement following the conclusion of negotiations with JamSports and approval by AMA Pro Racing's board demonstrates its bad faith and failure to use its best efforts and to negotiate the Promotion Agreement in breach of the explicit terms of the First Agreement.

**ANSWER:**    AMA denies the allegations contained in Paragraph 50 of the Complaint.

51.     AMA Pro Racing also breached the First Agreement by failing to deliver to JamSports - and by granting to Clear Channel - the promotion rights that had been contractually promised to JamSports with respect to the AMA Supercross series for the 2003 through 2009 seasons.

**ANSWER:**     AMA denies the allegations contained in Paragraph 51 of the Complaint.

52.     AMA Pro Racing also materially breached the terms of the First Agreement by:

(a)     failing and refusing to negotiate the terms of the Promotion Agreement in good faith;

(b)     soliciting, encouraging, entertaining, and/or entering discussions and/or negotiations concerning a promotion agreement with Clear Channel prior to expiration of the exclusive negotiating period under the First Agreement;

(c)     failing to promptly notify JamSports of any offers from third parties, including, but not limited to, Clear Channel, as well as the names of the offerors and the terms of the offers; and

(d)     communicating the confidential terms of the First Agreement to third parties, including, but not limited to, Clear Channel.

**ANSWER:**     Upon information and belief, AMA denies the allegations contained in Paragraph 52 of the Complaint.

53.     JamSports performed or was prepared to perform all of its obligations under the First Agreement.

**ANSWER:**     AMA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint and therefore denies same.

54.     JamSports has been injured by AMA Pro Racing's numerous breaches of the First Agreement.  Among other things, JamSports has been injured by AMA Pro Racing's breach of its obligation to use its best efforts and negotiate in good faith, including, but not limited to, its unreasonable refusal to sign the completed Promotion Agreement.

**ANSWER:**     Upon information and belief, AMA denies the allegations contained in Paragraph 54 of the Complaint.

## AMA Pro Racing's Breach of Contract – Promotion Agreement

55.     Pursuant to the First Agreement, AMA Pro Racing also had an obligation to negotiate any open issues with respect to the Promotion Agreement in good faith. In any event, given that there were no unresolved issues between the parties, AMA Pro Racing had a good faith obligation to enter into the Promotion Agreement. By virtue of the First Agreement, AMA Pro Racing was so obligated regardless of whether its board of directors - or the board of directors of its parent entity, the AMA - approved the Promotion Agreement.

**ANSWER:**    AMA denies the allegations contained in Paragraph 55 of the Complaint,

except to admit that, pursuant to the language of Exhibit A, AMA Pro Racing had an obligation

to negotiate in good faith with Plaintiff during the term of Exhibit A.

56.     As of February 8, 2002, at the latest, the parties had entered into a binding Promotion Agreement. AMA Pro Racing's final modifications were accepted by JamSports and JamSports communicated its acceptance on February 8, 2002. Moreover, the board of directors of AMA Pro Racing voted to approve the Promotion Agreement.

**ANSWER:**    Upon information and belief, AMA denies the allegations contained in

Paragraph 56 of the Complaint (which paragraph is misnumbered 55).

57.     JamSports performed or was prepared to perform all of its obligations under the Promotion Agreement.

**ANSWER:**    AMA denies that AMA Pro Racing and the Plaintiff ever entered into a so

called Promotion Agreement or that AMA Pro Racing and the Plaintiff ever had any obligations

related to that alleged Agreement. Further answering, AMA is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 57 of the Complaint and therefore denies same.

58.     AMA Pro Racing ultimately refused to provide JamSports with a signed Promotion Agreement and AMA Pro Racing has refused and failed to perform pursuant to the Promotion Agreement. Among other things, AMA Pro Racing failed to deliver to JamSports - and instead granted to Clear Channel - the promotion rights that were contractually promised to JamSports with respect to the AMA Supercross series for the 2003 through 2009 seasons.

**ANSWER:**    Upon information and belief, AMA admits that AMA Pro Racing did not

sign any "Promotion Agreement" with Plaintiff and that it later signed an agreement with Clear

Channel. Answering further, upon information and belief, AMA denies the remaining allegations contained in Paragraph 58 of the Complaint.

59. JamSports has been injured by AMA Pro Racing's breach of the Promotion Agreement and its breach of its obligation to use its best efforts and to negotiate in good faith under the Promotion Agreement. The parties agreed that JamSports would produce and promote the AMA Supercross Series events for at least seven (7) years and JamSports' consequential damages include the loss of the business opportunities presented by the Promotion Agreement.

**ANSWER:** AMA denies the allegations contained in Paragraph 59 of the Complaint.

60. JamSports has also suffered consequential damages that were foreseeable to AMA Pro Racing at the time the parties entered into the Promotion Agreement. JamSports' consequential damages include the loss of the additional business opportunities that were contemplated by the parties, including AMA Pro Racing, at the time that they entered into the Agreement.

**ANSWER:** AMA denies the allegations contained in Paragraph 60 of the Complaint.

## V. CLAIMS FOR RELIEF

### Count I

### Tortious Interference With First Agreement

61. JamSports repeats, realleges and incorporates by reference Paragraphs 1 through 60 as this Paragraph 61.

**ANSWER:** Defendant incorporates by reference all of its denials, admissions and averments contained in Paragraphs 1 through 60 of its Answer as if fully rewritten herein.

62. The First Agreement was a binding agreement that, *inter alia*, granted JamSports the right to promote the AMA Supercross series for the 2003-2009 seasons.

**ANSWER:** AMA denies the allegations contained in Paragraph 62 of the Complaint.

63. The AMA had knowledge of the First Agreement, including its requirements of exclusivity, confidentiality and good faith.

**ANSWER:** AMA denies the allegations contained in Paragraph 63 of the Complaint, except to admit that some of the members of its board of directors were aware of some of the terms and conditions contained in the document attached as Exhibit A to the Complaint.

64.     Despite such knowledge, the members of AMA's Board of Directors willfully communicated and negotiated with Clear Channel and its representatives regarding the promotion rights that had been contractually promised by AMA Pro Racing to JamSports with respect to the AMA Supercross series for the 2003-2009 seasons.

**ANSWER:**     AMA denies the allegations contained in Paragraph 64 of the Complaint.

65.     The AMA engaged in such communications and negotiations with the malicious purpose and effect of inducing AMA Pro Racing to breach its contractual obligations to JamSports, including the obligations of exclusivity, confidentiality and the obligation to negotiate in good faith the terms of the Promotion Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 65 of the Complaint.

66.     Further, the AMA ordered AMA Pro Racing not to sign the Promotion Agreement in direct contravention to the terms of the First Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 66 of the Complaint.

67.     The AMA's conduct was malicious, egregious and willfully done with the intent of inducing AMA Pro Racing to breach its contractual obligations with JamSports in favor of granting such rights to Clear Channel.

**ANSWER:**     AMA denies the allegations contained in Paragraph 67 of the Complaint.

68.     As a result of the AMA's wrongful conduct, AMA Pro Racing breached the First Agreement, and JamSports has been injured thereby.

**ANSWER:**     AMA denies the allegations contained in Paragraph 68 of the Complaint.

## Count II

### Tortious Interference With Promotion Agreement

69.     JamSports repeats, realleges and incorporates by reference Paragraphs 1 through 68 as this Paragraph 69.

**ANSWER:**     Defendant incorporates by reference all of its denials, admissions and averments contained in Paragraphs 1 through 68 of its Answer as if fully rewritten herein.

70.     The Promotion Agreement was a binding agreement that, *inter alia*, granted JamSports the right to promote the AMA Supercross series for the 2003-2009 seasons.

**ANSWER:**     AMA denies the allegations contained in Paragraph 70 of the Complaint.

71.     The AMA had knowledge of the Promotion Agreement and the requirements of the First Agreement obligating AMA Pro Racing to negotiate exclusively, confidentially and in good faith with JamSports the terms of the Promotion Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 71 of the Complaint, except to admit that some of the members of its board of directors had knowledge of some of the terms and conditions of the document attached to the Complaint as Exhibit A.

72.     The AMA also knew that AMA Pro Racing had finalized the terms of the Promotion Agreement and that the board of directors of AMA Pro Racing had voted to approve the Promotion Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 72 of the Complaint.

73.     Despite such knowledge, the AMA ordered AMA Pro Racing not to sign the Promotion Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 73 of the Complaint.

74.     The AMA's conduct was malicious, egregious and willfully done with the intent of inducing AMA Pro Racing to breach its contractual obligations with JamSports in favor of granting such rights to Clear Channel.

**ANSWER:**     AMA denies the allegations contained in Paragraph 74 of the Complaint.

75.     As a result of the AMA's wrongful conduct, AMA Pro Racing breached the Promotion Agreement, and JamSports has been injured thereby.

**ANSWER:**     AMA denies the allegations contained in Paragraph 75 of the Complaint.

## Count III (Alternative Claim)

### Tortious Interference with Prospective Economic Advantage

76.     JamSports repeats, realleges and incorporates by reference Paragraphs 1 through 60 as this Paragraph 76. JamSports pleads this count in the alternative to any claims alleged in this Complaint with respect to which there are necessary allegations that are inconsistent with any allegation in this count.

**ANSWER:**     Defendant incorporates by reference all of its denials, admissions and averments contained in Paragraphs 1 through 75 of its Answer as if fully rewritten herein.

77.     Pursuant to the First Agreement, JamSports had a reasonable expectation of entering into a valid business relationship with AMA Pro Racing regarding the promotion and production of the Supercross Series from 2003-2009.

**ANSWER:**     AMA denies the allegations contained in Paragraph 77 of the Complaint.

78.     The AMA had knowledge of JamSports' expectancy of a valid business relationship with AMA Pro Racing regarding the promotion and production of the Supercross Series from 2003-2009.

**ANSWER:**     AMA denies the allegations contained in Paragraph 78 of the Complaint.

79.     Despite such knowledge, the AMA willfully communicated and negotiated with Clear Channel in an effort to interfere with the promotion rights that JamSports reasonably expected to obtain from AMA Pro Racing with respect to the AMA Supercross Series for the 2003-2009 seasons.

**ANSWER:**     AMA denies the allegations contained in Paragraph 79 of the Complaint.

80.     The AMA's actions were intentional, unjustified and malicious, and prevented JamSports' business expectancy from developing into a valid business relationship with AMA Pro Racing for the promotion and production of AMA Supercross.

**ANSWER:**     AMA denies the allegations contained in Paragraph 80 of the Complaint.

81.     As a result of the AMA's wrongful conduct, AMA Pro Racing entered into a business relationship with Clear Channel with respect to the promotion and production of the AMA Supercross Series, and JamSports has been injured thereby.

**ANSWER:**     AMA denies the allegations contained in Paragraph 81 of the Complaint, except to admit that AMA Pro Racing entered into a Promotion Agreement with Clear Channel.

## Count IV (Alternative Claim)

### Breach of Contract – First Agreement

82.     JamSports repeats, realleges and incorporates by reference Paragraphs 1 through 60 as this Paragraph 82.

**ANSWER:**     Defendant incorporates by reference all of its denials, admissions and averments contained in Paragraphs 1 through 81 of its Answer as if fully rewritten herein.

83.    At the time it negotiated and entered into the First Agreement, AMA Pro Racing was acting as the alter-ego of the AMA, so that the separate personalities of the AMA and AMA Pro Racing no longer existed.

ANSWER:    AMA denies the allegations contained in Paragraph 83 of the Complaint.

84.    Further, contrary to its representations to JamSports, AMA Pro Racing was so controlled and manipulated by the AMA that it had become a mere instrumentality of its parent corporation.

ANSWER:    AMA denies the allegations contained in Paragraph 84 of the Complaint.

85.    AMA Pro Racing, organized by the AMA, carries on business without substantial capital in such a way that it is unlikely to have sufficient assets to pay its creditors.  In fact, in early 2001, the AMA paid a substantial judgment on behalf of AMA Pro Racing without requiring repayment of the debt.

ANSWER:    AMA denies the allegations contained in Paragraph 85 of the Complaint.

86.    The AMA has asserted that AMA Pro Racing could not enter into a binding contract with JamSports without the approval of the AMA.  Further, the AMA claimed to have the right to veto any contractual obligation purportedly entered into by AMA Pro Racing and, in fact, exercised that right against JamSports.

ANSWER:    AMA denies the allegations contained in Paragraph 86 of the Complaint, except to admit that AMA Pro Racing had put the Plaintiff on notice that any final contractual obligation, if any, entered into by and between AMA Pro Racing and Plaintiff was subject to the consent of AMA Pro Racing's sole shareholder, AMA.   AMA avers that, to that end, representatives of Plaintiff attended the meeting of the AMA Board of Directors held in Palm Desert, California in December 2001.

87.    The AMA makes major decisions involving AMA Pro Racing and directs its activities as evidenced by the AMA's direction to AMA Pro Racing as to how it should contract regarding the promotion rights for the 2003 through 2009 AMA Supercross series.

ANSWER:    AMA denies the allegations contained in Paragraph 87 of the Complaint, except to admit that it exercised its legal rights as the sole shareholder of AMA Pro Racing as those rights are defined under Ohio law.

88.    The First Agreement reflected the material terms of the agreed-to relationship with respect to JamSports' promotion of the AMA Supercross series from 2003 through 2009. The First Agreement is itself a binding agreement giving JamSports the right to promote the AMA Supercross series from 2003 through 2009.

**ANSWER:**    AMA denies the allegations contained in Paragraph 88 of the Complaint.

89.    Pursuant to the First Agreement, the AMA also had an obligation to use its best efforts and negotiate in good faith the terms of the Promotion Agreement a second, more definitive agreement, *i.e.*, the Promotion Agreement.

**ANSWER:**    AMA denies the allegations contained in Paragraph 89 of the Complaint.

90.    The purpose of the negotiations, as explicitly stated in the First Agreement, was to enter into a final Promotion Agreement which, in addition to the terms set forth in the First Agreement, would contain "customary covenants, representations, warranties, conditions precedent and indemnification provisions to be agreed upon by the parties for a transaction of this size and nature." (First Agreement, Paragraph 11).

**ANSWER:**    AMA denies the allegations contained in Paragraph 90 of the Complaint.

91.    The AMA, having encouraged and directed Jam Sports to expend resources in negotiating the Promotion Agreement and preparing for its performance, was also required to complete the transaction in good faith.

**ANSWER:**    AMA denies the allegations contained in Paragraph 91 of the Complaint.

92.    After notifying JamSports that the deal was complete pending inclusion of its final modifications to the Promotion Agreement and receiving JamSports' acceptance of those terms, the AMA was obligated to continue in good faith and sign the Promotion Agreement.

**ANSWER:**    AMA denies the allegations contained in Paragraph 92 of the Complaint.

93.    Even after notifying JamSports that it had obtained the approval of AMA Pro Racing's Board of Directors, the AMA refused to sign the Promotion Agreement and, subsequently, refused to perform in accordance with the terms of the Promotion Agreement.

**ANSWER:**    AMA denies the allegations contained in Paragraph 93 of the Complaint, except to admit that AMA has neither signed nor performed any Promotion Agreement with Plaintiff.

94. The AMA's failure to sign the final Promotion Agreement following the conclusion of negotiations with JamSports and approval by AMA Pro Racing's board demonstrates the AMA's bad faith and failure to use its best efforts and to negotiate the Promotion Agreement in breach of the explicit terms of the First Agreement.

**ANSWER:** AMA denies the allegations contained in Paragraph 94 of the Complaint.

95. The AMA also breached the First Agreement by failing to deliver to JamSports - and by granting to Clear Channel - the promotion rights that had been contractually promised to JamSports with respect to the AMA Supercross series for the 2003 through 2009 seasons.

**ANSWER:** AMA denies the allegations contained in Paragraph 95 of the Complaint.

96. The AMA also materially breached the terms of the First Agreement by:

      (a) failing and refusing to negotiate the terms of the Promotion Agreement in good faith;

      (b) soliciting, encouraging, entertaining, and/or entering discussions and/or negotiations concerning a promotion agreement with Clear Channel prior to expiration of the exclusive negotiating period under the First Agreement;

      (c) failing to promptly notify JamSports of any offers from third parties, including, but not limited to, Clear Channel, as well as the names of the offerors and the terms of the offers; and

      (d) communicating the confidential terms of the First Agreement to third parties, including, but not limited to, Clear Channel.

**ANSWER:** AMA denies the allegations contained in Paragraph 96 of the Complaint.

97. JamSports performed or was prepared to perform all of its obligations under the First Agreement.

**ANSWER:** AMA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 97 of the Complaint and therefore denies same.

98. To allow the AMA to hide behind AMA Pro Racing and adhere to the fiction of a separate corporate existence would severely prejudice JamSports and would promote inequitable consequences in that JamSports would be unable to enforce and recover damages under the duly executed First Agreement.

**ANSWER:** AMA denies any and all allegations contained in Paragraph 98 of the Complaint including, without limitation, that: (i) it hides behind AMA Pro Racing; (ii) the

-25-

separate corporate existence of AMA Pro Racing and AMA is a fiction; and (iii) Plaintiff is

entitled to recover damages under the alleged "First Agreement".

99.     JamSports has been injured by the AMA's numerous breaches of the First Agreement.   Among other things, JamSports has been injured by the AMA's breach of its obligation to use its best efforts and negotiate in good faith, including, but not limited to, its unreasonable refusal to sign the completed Promotion Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 99 of the Complaint.

100.     JamSports has also suffered damages that were foreseeable to the AMA at the time the parties entered into the First Agreement.   The parties agreed that JamSports would produce and promote the AMA Supercross Series events for at least seven (7) years, and JamSports' damages include the loss of the business opportunities presented by that Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 100 of the Complaint.

101.     JamSports also incurred consequential damages, including the loss of the additional business opportunities that were contemplated by the parties, including the AMA, at the time that they entered into the First Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 101 of the Complaint.

## <u>Count V</u>

### Breach of Contract – Promotion Agreement

102.     JamSports repeats, realleges and incorporates by reference Paragraphs 82-101 as this Paragraph 102.

**ANSWER:**     Defendant incorporates by reference all of its denials, admissions and

averments contained in Paragraphs 1 through 101 of its Answer as if fully rewritten herein.

103.     As of February 8, 2002, at the latest, the parties had entered into a binding Promotion Agreement.   The AMA's final modifications to the Promotion Agreement were accepted by JamSports and JamSports communicated its acceptance on February 8, 2002. Moreover, the board of directors of AMA Pro Racing voted to approve the Promotion Agreement.

**ANSWER:**     AMA denies the allegations contained in Paragraph 103 of the Complaint.

104.     Pursuant to the First Agreement, the AMA also had an obligation to negotiate any open issues with respect to the Promotion Agreement in good faith.   In any event, given that there were no unresolved issues between the parties, the AMA had a good faith obligation to enter into the Promotion Agreement.   By virtue of the First Agreement, the AMA was so

obligated regardless of whether AMA Pro Racing's directors or the AMA's directors approved the Promotion Agreement.

**ANSWER:** AMA denies the allegations contained in Paragraph 104 of the Complaint.

105. JamSports performed or was prepared to perform all of its obligations under the Promotion Agreement.

**ANSWER:** AMA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 105 of the Complaint and therefore denies same.

106. The AMA ultimately refused to provide JamSports with a signed Promotion Agreement and it has refused and failed to perform pursuant to the Promotion Agreement. Among other things, the AMA failed to deliver to JamSports - and instead granted to Clear Channel - the promotion rights that were contractually promised to JamSports with respect to the AMA Supercross series for the 2003 through 2009 seasons.

**ANSWER:** AMA denies the allegations contained in Paragraph 106 of the Complaint, except to admit that AMA has neither signed nor performed any Promotion Agreement with Plaintiff.

107. To allow the AMA to hide behind AMA Pro Racing and adhere to the fiction of a separate corporate existence would severely prejudice JamSports and would promote inequitable consequences in that JamSports would be unable to enforce and recover damages under the duly executed Promotion Agreement.

**ANSWER:** AMA denies any and all allegations contained in Paragraph 107 of the Complaint including, without limitation, that: (i) it hides behind AMA Pro Racing; (ii) the separate corporate existence of AMA Pro Racing and AMA is a fiction; and (iii) Plaintiff is entitled to recover damages under the alleged "First Agreement".

108. JamSports has been injured by the AMA's breach of the Promotion Agreement and its breach of its obligation to use its best efforts and to negotiate in good faith under the Promotion Agreement. The parties agreed that JamSports would produce and promote the AMA Supercross Series events for at least seven (7) years and JamSports' consequential damages include the loss of the business opportunities presented by the Promotion Agreement.

**ANSWER:** AMA denies the allegations contained in Paragraph 108 of the Complaint.

109. JamSports has also suffered consequential damages that were foreseeable to the AMA at the time the parties entered into the Promotion Agreement. JamSports' consequential damages include the loss of the additional business opportunities that were contemplated by the parties, including the AMA, at the time that they entered into the Agreement.

**ANSWER:** AMA denies the allegations contained in Paragraph 109 of the Complaint.

## ADDITIONAL DENIAL

110. AMA denies each and every allegation contained in Plaintiff's Complaint not specifically admitted in this Answer.

## FIRST AFFIRMATIVE DEFENSE

111. The Complaint, in whole or in part, fails to state a claim upon which the relief requested can be granted.

## SECOND AFFIRMATIVE DEFENSE

112. Plaintiff's breach of contact claim under the Promotion Agreement (Count V) is barred by Section 1 of the Statute of Frauds, 740 ILCS 80/1, in that the alleged contract was not to be performed within one year (i.e., the unsigned draft attached to the Complaint as Exhibit J had a minimum term of seven years) and was never signed by AMA Pro Racing. Similarly, because the validity of the Promotion Agreement is barred by the Statute of Frauds, Plaintiff's claim for tortious interference with the Promotion Agreement (Count II) likewise fails.

## THIRD AFFIRMATIVE DEFENSE

113. Although AMA specifically denies that its actions have caused any damage to Plaintiff, Plaintiff has failed to mitigate any purported damages. Further, although AMA specifically denies that its actions have caused any damage to the Plaintiff, such damages, if any, are too speculative to be recovered under Illinois law.

## FOURTH AFFIRMATIVE DEFENSE

114.    Plaintiff was aware that any "Promotion Agreement" that it reached with AMA
Pro Racing required the approval of AMA Pro Racing's sole shareholder, the AMA, and that
such approval was never obtained.    Consequently, Plaintiff is estopped from claiming that it
reached any enforceable "Promotion Agreement" with either AMA Pro Racing or AMA.

**WHEREFORE**, the Defendant, AMA, respectfully requests that this Court:  (i) enter
judgment in its favor and against Plaintiff; (ii) dismiss Plaintiff's Complaint with prejudice; and
(iii) grants such other and further relief to the AMA as this Court deems just and proper.

Defendant demands trial by jury.

Dated:  May 21, 2004

Respectfully submitted,

THE AMERICAN MOTORCYCLE
ASSOCIATION, INC., d/b/a THE AMERICAN
MOTORCYCLIST ASSOCIATION

By: _____
One of its attorneys

Timothy J. Owens
Owens & Krivda Co., L.P.A.
471 East Broad Street, Suite 2001
Columbus, Ohio 43215
Telephone:  (614) 228-8995

Kevin L. Shoemaker
Shoemaker, Howarth & Taylor, LLP
471 East Broad Street, Suite 2001
Columbus, Ohio 43215
Telephone:  (614) 469-0100

Steven F. Pflaum
McDermott, Will & Emery
227 West Monroe Street
Chicago, Illinois 60606
Telephone:  (312) 372-2000

## CERTIFICATE OF SERVICE

I, Steven F. Pflaum, hereby certify that I served the foregoing **ANSWER AND AFFIRMATIVE DEFENSES OF AMERICAN MOTORCYCLIST ASSOCIATION TO PLAINTIFF'S COMPLAINT** on all counsel or record by depositing same in the United States Mail, first class postage prepaid, on May 21, 2004, addressed as follows:

Jeffrey Singer
P. Mark Crane
Paul E. Wojcicki
Segal McCambridge Singer & Mahoney
One IBM Plaza
330 N. Wabash Avenue, Suite 200
Chicago, Illinois 60611

Bruce S. Sperling
Greg Shinall
Sperling & Slater
55 W. Monroe Street - Suite 3300
Chicago, IL  60603

Steven F. Pflaum

CHI99 4302134-1.071142.0011